WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| World Nutrition Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>Advanced Supplementary Technologies Corp., et al.,<br><br>    Defendants.<br><br>Advanced Supplementary Technologies Corp.,<br><br>    Counterclaimant,<br><br>v.<br><br>World Nutrition Incorporated,<br><br>    Counter Defendant. | No. CV-19-00265-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant and Counterclaimant Advanced Supplementary Technologies Corp.'s ("AST") Motion for Sanctions (Doc. 145.) For the reasons below, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff and Counter-Defendant World Nutrition Inc. ("WNI") and AST sell

enzyme products directly to consumers. (Doc. 132 at 4.) AST and WNI are direct competitors that purport to sell products that are either enterically coated or that contain ingredients with enteric coating.[1] Both parties assert that the other is falsely advertising products[2] as containing these enteric coatings, when they actually do not. (Docs. 86, 132.)

On April 17, 2020, AST served its First Set of Requests for Production of Documents ("RFPs") on WNI. (Doc. 145-2 at 2, 13.) The RFPs relevant to this Motion requested documents (1) showing WNI's advertising of the WNI Products; (2) relating to WNI's testing of the AST Products and WNI Products for enteric coating; and (3) providing quality assurance information related to the manufacturing of the WNI Products. (Doc. 145 at 3.) WNI served its responses on June 9, 2020, (Doc. 145-2 at 26, 35), but did not produce any responsive documents until September 2020. (Doc. 145-1 at 2–3). AST believed that these responses were deficient, which was later confirmed by documents produced in response to third-party subpoenas. (Doc. 145-1 at 7–8.) After a lengthy meet-and-confer process that ended with WNI representing that it had no more responsive documents, (Doc. 145-3 at 18), AST filed the instant Motion for Sanctions.

After AST filed this Motion—and over a year after the RFPs were served—WNI produced "approximately 474 documents consisting of 869 pages." (Doc. 161 at 2.) Despite the delayed disclosure, AST believes there may be more responsive documents being withheld by WNI, including WNI webpages advertising products containing "buffer enteric-coated serrapeptase" and emails or other communications related to the testing of the WNI and AST Products.[3] (Doc. 161 at 5–8.) Given the late disclosure and the potential

---

[1] According to the Complaint and Countercomplaint, enteric coatings allow the enzymes to pass through the stomach "until they can be successfully released and absorbed." (Doc. 132 at 4); (Doc. 86 at 6.)

[2] The Court will refer to the products as the "WNI Products" and "AST Products." The WNI Products include two products advertised as having an enteric coating and four other products advertised as containing "buffer enteric-coated serrapeptase." (Doc. 145 at 3.) The AST Products are four products advertised as containing enteric-coated serrapeptase. (Doc. 145 at 3.)

[3] At the evidentiary hearing, defense counsel represented that although some webpages and some information related to these tests have been disclosed, AST does not know how long the allegedly false information appeared on WNI's website, nor does it know the methodology of the tests conducted.

- 2 -

for documents having been lost or destroyed, AST seeks the following sanctions: (1) to prohibit WNI from introducing any prior test results of the AST Products or WNI Products at WNI's request, (2) to make a finding that WNI advertised four of the WNI Products[4] as containing "buffer enteric-coated serrapeptase" from August 1, 2016 through at least May 18, 2021; (3) to make a finding that the lost documents would have shown that WNI acted knowingly and with an evil mind with respect to WNI falsely advertising these four products as containing "buffer enteric-coated serrapeptase"; (4) to make a finding that AST has established the prejudice element of its laches defense; and (5) to award attorneys' fees. (Doc. 145 at 15–16.) The Court held an evidentiary hearing on this matter on February 17, 2022, wherein it allowed the parties to provide supplemental briefing on only the amount of attorneys' fees that should be awarded. (Doc. 188 at 1, 33.)

**DISCUSSION**

AST asserts that WNI is subject to sanctions on three grounds: Federal Rules of Civil Procedure 26(g) and 37(e) and the Court's inherent authority. (Doc. 145.) The Court considers each ground in turn below, and then considers what sanctions, if any, should be imposed.

**I.  Rule 26(g)**

AST argues that sanctions should be awarded under Federal Rule of Civil Procedure 26(g). (Doc. 145 at 18.) This case is governed by the Mandatory Initial Discovery Pilot ("MIDP"), which significantly alters the discovery rules contained in the Federal Rules of Civil Procedure. (Doc. 3.) Unlike the Federal Rules, MIDP requires that all parties disclose "facts that are relevant to the claims and defenses in the case, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses." (Doc. 3 at 4.) However, although MIDP replaces some of Rule 26's requirements, it does not replace 26(g)'s certification requirement. (Doc. 3 at 4, 6, 11.) That Rule requires that every discovery response be signed by at least one attorney of record, and that that signature certifies the attorney has conducted a "reasonable inquiry"

---
[4] The products are Vitalzym Plus, Vitalzym X, Vitalzym Original Hybrid, and Vitalzym Cardio. (Doc. 145 at 15.)

that the response is consistent with the federal rules and "not interposed for any improper purpose." Fed. R. Civ. P. 26(g). As explained by the advisory committee notes, "the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Whether an attorney's inquiry is "reasonable" is judged by an objective standard. *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon LP*, 76 F.3d 1003, 1007–08 (9th Cir. 1996). If the attorney's certification violates Rule 26(g)(1) without substantial justification, the Court *must* impose an appropriate sanction on "the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Such sanctions may include attorneys' fees caused by the violation. *Id.*

Here, Mr. Levine affixed his signature to eight supplemental responses to the RFPs at issue. (Doc. 145-2 at 35, 54, 66, 85, 90, 112, 119); (Doc. 145-3 at 10.) Each time, Mr. Levine certified that he had conducted a reasonable inquiry into the adequacy of the response. Shortly after AST filed the instant Motion for Sanctions (Doc. 145), however, WNI produced over 800 pages of apparently unproduced documents due to an "unintentional oversight." (Doc. 159 at 8); (Doc. 161 at 2.) Neither Mr. Levine nor WNI has provided any evidence to explain why these documents were not provided when they were first requested in April 2020; the only explanation given is that WNI did not discover these documents until after the Motion for Sanctions was filed, when it instructed an IT Consultant to search for the relevant terms using the search bar on WNI's own website. (Doc. 159 at 25.) But that does not explain why, if there had been a reasonable investigation, no effort was made to perform this simple search when the RFPs were originally served or after the numerous meet-and-confers; further, it does not explain why other responsive documents were not produced. Regardless of whether this "oversight" was the fault of WNI, for failing to produce, or Mr. Levine, for failing to adequately instruct, this volume of unexplained, late production is unacceptable under the Federal Rules of Civil Procedure, and even if unintentional, is sanctionable under Rule 26(g).[5]

---

[5] Because no explanation—let alone justification—has been put forward to explain the delayed production, the violation is also not substantially justified.

*Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987); *see also Brock v. Cnty. of Napa*, No. C–11–0257 SBA (JCS), 2012 WL 2906593, at *5 (N.D. Cal. July 16, 2012); *Logtale, Ltd. v. IKOR, Inc.*, No. C-11-05452 CW (DMR), 2013 WL 3967750, at *2 (N.D. Cal. July 31, 2013); *R & R Sails Inc. v. Ins. Co. of St. of Pa.*, 251 F.R.D. 520, 525 (S.D. Cal. 2008); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1349–52 (N.D. Ga. 2012); *cf. Kristensen v. Credit Payment Servs.*, No. 2:12–cv–0528–APG–PAL, 2014 WL 6675748, at *6 (D. Nev. Nov. 25, 2014) ("[The defendant] has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery, and has an affirmative duty to seek the information easily available to it from its employees, agents or others subject to its control.")

The Court orders WNI to pay AST's reasonable costs for bringing this motion and for causing an unduly lengthy meet-and-confer process. *See* 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.154(c). WNI admitted that it knew it was under an obligation to preserve documents beginning in June 2018. (Doc. 159 at 9.) WNI has been involved in prior litigation in this very district. Clerk's Judgment, *Marlyn Nutraceutical v. World Nutrition, Inc.*, No. 02cv1876-HRH (D. Ariz. Mar. 5, 2009), ECF 448. Given that that case went to trial, WNI would have been fully aware of the discovery practices in this district and in this Court when it brought this lawsuit. With full knowledge of those practices, and with full knowledge of its own limited staffing,[6] WNI decided to file this lawsuit anyway, in which it agreed to abide by those practices and by the Federal Rules of Civil Procedure. It has not done so. Not only did WNI not do so, it also failed to comply with the Court's December 2020 order requiring WNI to conduct an "adequate internal investigation" as to whether further responsive documents existed. (Doc. 107.) The Court, therefore, grants AST's request for reasonable attorneys' fees against WNI.

**II. Rule 37(e) and Court's Inherent Authority**

AST also seeks sanctions pursuant to Federal Rule of Civil Procedure 37(e) and

---

[6] WNI argued at the evidentiary hearing that it employed "approximately three office personnel" and had "a principal for which English is not a native language." (Doc. 188 at 12.)

under the Court's inherent authority. (Doc. 145 at 12–13, 16.) To order any sanction under Rule 37(e), a district court must find: (1) the lost electronically-stored information ("ESI") "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI was lost "because a party failed to take reasonable steps to preserve it"; and (3) the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Under its inherent authority, a district court may sanction a party if "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence[.]" *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

Although the Court understands that AST can only speculate as to the existence of documents it has not received, that fact does not alleviate AST's burden to show that evidence has been lost or destroyed. AST's assertions rest on speculation, not proof. AST, therefore, has not met its burden to show that documents were lost or destroyed, let alone that it was done with a culpable state of mind. Accordingly, sanctions are not warranted under either Rule 37(e) or the Court's inherent authority.[7] Because AST has not shown that documents were actually lost or destroyed, the Court declines to award sanctions other than reasonable attorneys' fees for the dilatory production. However, because WNI has agreed to stipulate that it advertised the four WNI Products above as containing "buffer enteric-coated serrapeptase" from August 1, 2016 through at least May 18, 2021, that fact is conclusively established for purposes of this litigation. (Doc. 188 at 26.) Moreover, because WNI could not confirm that it had searched for documents related to "Godo Shusei Co., Ltd." at the evidentiary hearing, the Court orders that it search for such documents and either confirm that no such documents exist, or produce the relevant documents to AST.

---

[7] The Court denies the Motion, in part, without prejudice. Should affirmative evidence come to light that documents *were* actually lost or destroyed, AST should raise that issue with the Court.

- 6 -

(Doc. 188 at 18–21.)

### III. Amount of Attorneys' Fees

The final issue is how much attorneys' fees should be awarded. "The starting point for determining reasonable attorneys' fees is the 'lodestar,' which is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Vieste, LLC v. Hill Redwood Dev.*, No. C–09–04024 JSW (DMR), 2011 WL 588145, at *4 (N.D. Cal. Feb. 10, 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986) (citation omitted).

#### A. Reasonableness of Rates

WNI first challenges the reasonableness of counsel's hourly rates. (Doc. 159 at 15–16); (Doc. 184 at 8–9.) To determine a reasonable hourly rate, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Although counsel for AST argues that their rates are reasonable in the Southern California market, they offer no caselaw to support that the relevant community is anywhere other than the forum in which the district court sits: Phoenix, Arizona. (Doc. 186 at 12.) Accordingly, the Court will apply a Phoenix market rate.[8]

---

[8] WNI does not object to Paralegal "A. Potter's" requested rates of $350 and $300. (Doc. 179-8 at 14); (Doc. 179-7 at 104-106.)

Karla Kraft and Lisa Northrup are both experienced attorneys who specialize in complex commercial litigation. (Docs. 186-4, 186-5.) This case involves multiple Lanham Act claims in relatively specialized subject matter: the enteric coatings of "systemic enzyme products." (Doc. 132 at 4.) Although the Court recognizes that AST's counsel have many years of complex litigation experience between them, and that this case poses many complicated issues, the Los Angeles market rate is considerably higher than the Phoenix market rate.

Ms. Northrup's proposed rates are $525 per hour for time billed in 2021 and $635 per hour for time billed in 2022. (Doc. 186-2 at 4.) She obtained her law degree from UC Berkeley and is an associate with nine years of experience, including significant experience litigating complex cases. (Doc. 186-2 at 4); (Doc. 186-5.) AST argues that Ms. Northrup's proposed rates are reasonable because Rachael Pugel, an associate at Snell & Wilmer in Phoenix, charges $470 per hour for time billed in 2022. (Doc. 186-1 at 2.) Ms. Pugel has seven years of experience. (Doc. 186-1 at 2.) WNI's associate counsel, Daniel Peabody, charges $275 per hour, but has only five years of experience.[9] (Doc. 184 at 9.) Mr. Peabody, however, is not a perfect comparator because he has less experience than Ms. Northrup, and WNI has provided no information about his experience litigating highly specialized cases like this one. The Court finds Ms. Pugel to be a more apt comparison, given that Ms. Pugel has seven years of experience, including experience with intellectual property and various commercial litigation issues. (Doc. 186-1 at 2.) Given Ms. Northrup's two years of seniority over Ms. Pugel, the Court finds her $525 rate to be reasonable. Although this rate is on the higher side of attorney rates, it is not out of line with similar rates found reasonable in this district. *Strojnik v. Driftwood Hosp. Mgmt. LLC*, No. CV-20-01532-PHX-DJH, 2021 WL 5961645, at *4 (D. Ariz. Dec. 16, 2021) ($460 and $600 per hour reasonable); *Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *5 (D. Ariz. July 27, 2018) ($300 to $550 reasonable); *Kaufman v.*

---

[9] Mr. Peabody received his JD in 2017. *Daniel J.F. Peabody*, Jennings Strouss, https://jsslaw.com/professionals/peabody-daniel-j-f/ (last visited May 11, 2022.)

*Warner Bros. Ent. Inc.*, No. CV-16-02248-PHX-JAT, 2019 WL 2084460, at *13 (D. Ariz. May 13, 2019) (collecting cases upholding rates above $470 per hour). The Court, however, declines to award the $635 per hour rate. Joseph G. Adams, a partner at Snell & Wilmer with over twenty years of experience—including experience particularly relevant to this case—charges $650 per hour for time billed in 2022. (Doc. 186-1 at 2.) It is, in the Court's assessment, unreasonable for a senior associate with nine years of experience to charge only $15 per hour less than an attorney with over a decade more years of relevant experience. The Court will apply the $525 per hour rate for Ms. Northrup's work on this Motion.

Ms. Kraft's proposed rates are $765 per hour for time billed in 2021 and $875 per hour for time billed in 2022. (Doc. 186-2 at 4.) She received her law degree from USC and is a shareholder with over twenty years of experience. (Doc. 186-2 at 4.) AST argues that these rates are reasonable because Mr. Adams, a partner at Snell & Wilmer who has been practicing for almost the same amount of time, charges $650 per hour for time billed in 2022. (Doc. 186-1 at 2.) Jimmie Purcell, WNI's counsel in this matter and a partner with about the same number of years of experience, charges only $435 per hour. (Doc. 184 at 9.) Again, however, while AST has provided exhibits supporting the similarities in relevant experience between Mr. Adams and Ms. Kraft, WNI has provided no evidence for the Court to find that Mr. Purcell is an appropriate comparator. (Docs. 186-1, 186-4); (Doc. 184 at 9.) Absent such evidence, the Court finds no reason to distinguish between Ms. Kraft's and Mr. Adams's hourly rates because they both have extensive experience litigating complicated, specialized cases like this one and belong to large law firms in their respective communities. (Docs. 186-1, 186-4.) The Court will apply a $650 hourly rate for Ms. Kraft's work on this Motion.

### B. Reasonable Hours

The Court next considers the hours expended by AST's counsel to assess their reasonableness. The Court "has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, [an appellate court] will defer to its

determination . . . regarding the reasonableness of the hours claimed by the [movant]." *Prison Legal News*, 608 F.3d at 453 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). In reviewing the hours claimed, the Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary. *See, e.g.*, *Hensley*, 461 U.S. at 433; *see also Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) (stating that "the Court must eliminate from the lodestar time that was unreasonably, unnecessarily, or inefficiently" spent). Because the extent of the plaintiff's success is determined as part of the initial lodestar calculation, "the favored procedure is for the district court to consider" it in determining the "hours reasonably expended at a reasonable rate," rather than "in subsequent adjustments to the lodestar figure." *Gates*, 987 F.2d at 1403.

AST requests approximately $184,152.25 for over 300 hours of attorney and paralegal time. The parties submitted a spreadsheet with AST's time entries and WNI's specific objections. The Court applied appropriate reductions where necessary based on WNI's specific objections, which are explained in more detail below. WNI also requested a global reduction for block billing, which the Court also considers.

### 1. Meet-and-Confers

WNI objects to AST's billing for the various meet-and-confers conducted since the RFPs were first served. (Doc. 159 at 15–16.) The RFPs at issue have remained in dispute since April 2020, and AST has incurred significant costs related to these meet-and-confers, which were intended to resolve the dispute and avoid unnecessary motion practice. Although the Court recognizes that many of these meet-and-confers related to discovery disputes outside the scope of the instant Motion, it also recognizes that AST has already reduced many of the time entries related to the meet-and-confers. The Court, therefore, made appropriate reductions based on the proportion of each meet-and-confer that was related to relevant matters; however, it did so only as necessary in light of AST's reductions. Time entries may have been further reduced or stricken entirely for other reasons, as explained by this Order.

Based on an independent evaluation of the meet-and-confer letters in the record, the Court decided to make the following adjustments for each letter, with the percentage shown being the total proportion of time recoverable per letter. The percentages are that of the *total* time; therefore, if AST's reductions in the individual time entries already matched the reduced amount, the Court made no further adjustment, except as otherwise explained in this Order.

> 06/19/2020 Letter: 30%
> 
> 08/11/2020 Letter: 35%
> 
> 10/05/2020 Letter: 35%
> 
> 11/11/2020 Letter: 25%
> 
> 03/31/2021 Letter: 50%

After the Court's reductions as explained above,[10] the Court determined that 47.7 hours was recoverable for AST's time spent on the meet-and-confers. The time breaks down as follows:

> Ms. Northrup: 36.3 hours
> 
> Ms. Kraft: 11.4 hours[11]

**2. Motion and Evidentiary Hearing**

WNI next contends that AST should not be able to recover for fees incurred in the preparation and briefing of the Motion for Sanctions and the evidentiary hearing. (Doc. 184 at 8.) As a general matter, "time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho*, 523 F.3d at 981; *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 17cv1118-BEN (BLM), 2019 WL 2209398, at *5 (S.D. Cal. May 22, 2019). Rule 26(g), however, states that only attorneys' fees "caused by the violation" are recoverable. Fed. R. Civ. P. 26(g)(3). The question, therefore, is whether AST's Motion and subsequent evidentiary hearing were "caused" by WNI's erroneous

---

[10] The Court reduced Ms. Kraft's time on this basis for the following time entries: 6/18, 7/29, 9/24, and 10/05. It reduced Ms. Northrup's time on this basis for the following time entries: 6/18, 6/19, 7/28, 10/05, 10/26, 10/28, 10/30, 2/11, 2/23, and 3/26.

[11] Ms. Kraft's time entries were reduced further, as noted below.

certifications that a reasonable investigation had been made to find and produce responsive documents. Had such an investigation been made, as required by the Federal Rules of Civil Procedure, the documents at issue would have presumably been produced. Moreover, it was Mr. Levine's recent certification in response to the Court's prior order, (Doc. 107); (Doc. 145-3 at 18), that directly triggered this very Motion, which in turn caused the Court to schedule an evidentiary hearing. (Doc. 145-1 at 5.) The Motion and evidentiary hearing were thus caused by WNI's violation. The fact that AST did not present witnesses at the evidentiary hearing does not sever the causal connection between WNI's violation and the fees incurred. The Court will not penalize AST for complying with the Court's order while also being mindful of the Court's time and need to manage its docket. (Doc. 172.) The Court does note, however, that AST ultimately prevailed on only one of the three grounds advanced in the Motion, and WNI disclosed the bulk of the documents at issue on the day the Motion was filed, so AST achieved at least one of its objectives by merely filing the original Motion. Moreover, even if AST had presented evidence, AST did not have actual evidence that documents had been lost or destroyed. As for the documents that were produced late, the Rule 26(g) showing had, for the most part, already been made when WNI disclosed the documents. In light of the above, and in consideration of the Court's duty to award only the fees "caused" by the violation, the Court reduced time entries related to the Motion (Doc. 145), the Reply (Doc. 161), the evidentiary hearing, and the Supplemental Reply (Doc. 186), by 30% to account for the two unmeritorious grounds and to account for the fact that AST had largely—though not wholly—accomplished its goal when it filed the original Motion.[12]

After these reductions, the Court determined that 113.7 hours was recoverable for the briefing on the Motion and the evidentiary hearing. The time breaks down as follows:

---

[12] Ms. Kraft's time entries for these dates were reduced on this basis: 4/20, 4/27, 5/14, 5/17, 5/19, 5/20, 5/21, 6/29, 1/4, 1/5, 1/6, 1/11, 1/12, 1/26, 2/7, 2/8, 2/9, 2/14, 2/15, 2/16, 2/17, 3/4, 3/9, and 3/10. Ms. Northrup's time entries for these dates were reduced on this basis: 4/5, 4/8, 4/20, 4/22, 4/26, 4/27, 4/30, 5/3, 5/4, 5/5, 5/7, 5/11, 5/12, 5/13, 5/14, 5/17, 5/18, 5/19, 5/20, 5/21, 6/23, 6/24, 6/25, 6/28, 6/29, 7/2, 1/4, 1/5, 1/6, 1/10, 1/11, 1/12, 1/13, 1/14, 1/18, 1/19, 1/20, 1/24, 1/25, 1/26, 1/31, 2/2, 2/3, 2/4, 2/7, 2/8, 2/9, 2/10, 2/11, 2/14, 2/15, 2/16, 3/4, 3/7, 3/8, 3/9, and 3/10. Paralegal A. Potter's time entries for these dates were reduced on this basis: 5/4, 5/6, 5/13, 2/9, 2/10, 2/11, and 2/15.

       Ms. Northrup: 86.1 hours

       Ms. Kraft:  20.8 hours

       A. Potter: 6.8 hours

### 3. Block Billing

WNI also objects to AST's block billing. (Doc. 184 at 6–7.) Many courts have noted that block billing "mak[es] it nearly impossible . . . to identify the specific time spent on discrete tasks in order to determine if [the] time was reasonable." *Notorious B.I.G. LLC v. Yes. Snowboards*, No. CV 19-1946-JAK (KSx), 2021 WL 6752168, at *8 (C.D. Cal. Dec. 22, 2021); *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962 CAS (KSx), 2018 WL 5914235, at *5 (C.D. Cal. Sept. 18, 2018); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. Mar. 2, 2012). The Court made some reductions based on the individual time entries and WNI's objections in the parties' spreadsheet.[13] Because the block billing is widespread, however, and because numerous time entries contain both redacted and unredacted time[14] for which the Court could not readily discern reasonableness in the individual entries, the Court will apply an additional 15% global reduction to account for block billed entries. This reduction is well within the range that courts use to account for block billing, and it is on the lower end of that range because the Court has already made adjustments based on WNI's specific objections in the spreadsheet. *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) (20% reduction); *Bird v. Or. Comm'n for the Blind*, No. 3:18-cv-01856-YY, 2021 WL 7709970, at *4–5 (D. Or. Aug. 11, 2021) (collecting cases and imposing 25% reduction); *Rahman v. FCA US LLC*, --- F. Supp. 3d ----, 2022 WL 1013433, at *5 (C.D. Cal. Mar. 29, 2022) (10% reduction); *Norton v. Maximus Inc.*, No. 1:14-30 WBS, 2016 WL 6247004, at *4 (D. Idaho May 19, 2016) (20% reduction); *Dinsbach v. Harris*, No. CV-18-03595-PHX-GMS, 2022 WL 742726, at *5 (D. Ariz. Mar. 11, 2022) (20% reduction).

---

[13] Ms. Kraft's affected time entries were 7/29, 9/24, 10/28, 10/30, 12/14, 12/16, 2/8, 2/14, and 2/17. Ms. Northrup's affected time entries were 7/29, 8/4, 8/26, 9/23, 9/28, 10/28, 11/11, 2/12, and 5/21.

[14] The vast majority of time entries are block billed and heavily redacted. (Docs. 179-7; 186-3.)

### 4. Duplicity

"Even if there is no objection to the number of hours sought, the Court 'may not uncritically accept a fee request, but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case.'" *Notorious B.I.G.*, 2021 WL 6752168, at *6 (quoting *Open Source Sec., Inc v. Perens*, No. CV 17-4002-LB, 2018 WL 2762637, at *4 (N.D. Cal. June 9, 2018)); *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10–CV–0541–GPC (WVG), 2014 WL 6851612, at *7 (S.D. Cal. Dec. 3, 2014). Upon review of the time entries, the Court found many entries to be duplicitous of other work: Ms. Kraft often billed time that was duplicitous of Ms. Northrup's time. Although "of course, some duplication of effort is necessary," and this case is complex, the Court does not believe that a discovery dispute needed to be handled by a partner with twenty years of experience as opposed to a less experienced but highly capable associate attorney. *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013); *Logtale*, 2013 WL 3967750, at *4. This was especially true for Ms. Kraft's time spent on the meet-and-confers, which easily could have been handled by an associate. Given the Court's concern with these time entries, the Court reduced Ms. Kraft's time entries spent on the meet-and-confers by 20%.[15] After applying the reduction, Ms. Kraft's time amounts to 9.1 hours for the meet-and-confers.

### 5. Zeroed-Out Entries

WNI objected to several entries as either not containing any relevant tasks, as containing inadequate descriptions such that the Court could not determine whether the listed tasks were relevant, or as relating to stipulations between the parties. Because the stipulations benefitted both parties and the Court, the Court will award no attorneys' fees. Moreover, AST is not entitled to recover fees for time unrelated to the Rule 26(g)

---

[15] Ms. Kraft's time entries for these dates were reduced on this basis: 6/15, 6/18, 7/3, 7/7, 7/29, 8/4, 8/11, 9/21, 9/23, 9/24, 10/2, 10/5, 10/28, 10/30, 11/2, 11/11, 11/12, 11/13, 11/17, 11/29, 11/30, 12/8, 12/11, 12/14, 12/16, 12/17, 12/18, 12/23, 12/28, 12/29, 2/4, 2/8, 2/12, 2/16, 3/3, 3/25, 3/30, and 3/31.

violations. The Court thus reduced irrelevant time entries to zero.[16]

### 6. Total

The Court finds that 159.1 hours is reasonable in this matter. The lodestar is as follows:

Ms. Northrup: 122.4 x $525 =$64,260

Ms. Kraft: 29.9 x $650 = $19,435

A. Potter: (3.6 x $350) + (3.2 x $300) = $2,220

Applying the reasonable rates as determined above, the lodestar yields a total of $85,915. With the 15% reduction for block billing, AST is entitled to $73,027.75.

## CONCLUSION

Because WNI produced over 800 pages of responsive documents over a year after the RFPs at issue were served—and only after this Motion was filed—and because Mr. Levine had prior represented that WNI had no more responsive documents, AST's Motion is granted as to Rule 26(g). AST is entitled to reasonable attorneys' fees in the amount of $73,027.75. However, AST has failed to meet its burden of proof on the remaining issues; therefore, the remainder of the Motion is denied.

**IT IS HEREBY ORDERED** that Defendant and Counter-Complainant Advanced Supplementary Technologies Corp.'s Motion for Sanctions (Doc. 145) is **GRANTED** in part and **DENIED** in part. AST is entitled to reasonable attorneys' fees in the amount of $73,027.75. The rest of the Motion is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff and Counter-Defendant World Nutrition Inc. shall pay $73,027.75 in reasonable attorneys' fees to Defendant and Counter-Claimant Advanced Supplementary Technologies Corp. within 30 days from the date of this Order.

---

[16] Ms. Kraft's time entries for these dates were reduced to zero: 8/26, 9/28, 10/6, 12/9, 12/15, 12/17, 2/9, 5/13, 1/10, 1/13, 1/14, 1/20, 1/25, and 2/11. Ms. Northrup's time entries were reduced to zero: 6/15, 7/23, 9/21, 10/13, 10/2, 12/14, 12/17, 12/18, 2/4, 2/9, 3/31, 5/11, 5/19, 5/20, 1/5, 1/11, 1/13, 1/14, 1/19, 1/20, 1/21, and 1/24. Associate Attorney N. Carbonel's time entries for these dates were reduced to zero: 1/5 and 1/6. Paralegal A. Potter's time entries for these dates were reduced to zero: 1/7, 1/10, and 1/11.

**IT IS FURTHER ORDERED** conclusively establishing that Plaintiff and Counter-Defendant World Nutrition Inc. advertised its products Vitalzym Plus, Vitalzym X, Vitalzym Original Hybrid, and Vitalzym Cardio on its website as containing buffer enteric-coated serrapeptase from August 1, 2016 through at least May 18, 2021.

**IT IS FURTHER ORDERED** that WNI search for documents related to "Godo Shusei Co., Ltd." and either confirm to AST that no such documents exist, or produce all relevant documents to AST. WNI shall conduct its search and report the results to AST within fourteen days from the date of this Order.

Dated this 10th day of June, 2022.

G. Murray Snow
Chief United States District Judge