**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| World Nutrition Incorporated,<br><br>         Plaintiff,<br><br>v.<br><br>Advanced Enzymes USA, et al.,<br><br>         Defendants. | No. CV-19-00265-PHX-GMS<br><br>**ORDER** |

Pending before the Court are World Nutrition Incorporated's ("WNI") Amended Motion for Award of Attorneys' Fees and Non-Taxable Expenses (Doc. 340), WNI's Motion to Review Bill of Cost Pursuant to Federal Rules of Civil Procedure 54(d) (Doc. 355), and Advanced Supplementary Technologies Corporation's ("AST") Motion to Amend Findings and for New Trial, or in the Alternative to Alter or Amend Judgment or for Relief from Judgment (Doc. 341). For the reasons detailed below, all three motions are denied.[1]

## BACKGROUND

This matter arises out of claims between WNI and AST under the Lanham Act. On February 27, 2024, the Court entered findings of facts and conclusions of law, holding that

---

[1] The parties have requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

WNI succeeded on its claim against AST, and that AST succeeded on two of its three counterclaims against WNI. (Doc. 336 at 13–14, 16–20). Accordingly, disgorged profits were awarded to both parties. (*Id.* at 14–16, 20–22). Additionally, WNI was granted a permanent injunction. (*Id.* at 23–24). The Court offset the Parties' awards. (*Id.*). Because WNI's award of disgorged profits was larger than AST's, AST was ordered to pay WNI $1,827,651.68.

On March 12, 2024, WNI filed a Motion for Attorney Fees. (Doc. 338). The next day, March 13, 2024, WNI filed an Amended Motion for Attorney Fees, which requested an additional $41,450.50. (Doc. 340). On March 12, 2024, WNI submitted an affidavit and supporting documentation for its bill of costs. (Doc. 339). AST filed an objection on March 26, 2024. (Doc. 342). On April 12, 2024, the Clerk denied WNI's bill of costs as "inadequately documented." (Doc. 351). On April 19, 2024, WNI filed a Motion to Review Bill of Costs Pursuant to Federal Rule of Civil Procedure 54(d). Finally, on March 26, 2024, AST filed a Motion to alter or amend this Court's judgment.

## DISCUSSION

### I. Attorney's Fees

#### A. Legal Standard

The Lanham Act states that "in exceptional cases [courts] may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Courts consider the totality of the circumstances in determining whether a case is sufficiently exceptional to warrant attorney fees. *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180 (9th Cir. 2016). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Supreme Court has advised that courts may consider "a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance

considerations of compensation and deterrence.'" *Id.* at 554 n.6 (*citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

### B. Analysis

Because both sides succeeded on at least one claim, the parties rigorously debate whether WNI is a prevailing party at all. Such a determination is not necessary, however, because this case is not exceptional and, thus, is not eligible for a grant of attorney fees even if WNI was a prevailing party.

WNI claims this case is exceptional because AST's defenses were objectively unreasonable. Not so. WNI alleges that AST made this case exceptional by asserting that its products—specifically Serrapeptase and Nattokinase—were enterically coated. (Doc. 340 at 7–12). Ultimately, AST's claims that its products were enterically coated were found to be literally false, giving rise to WNI's ultimate success on its false advertising claim. (Doc. 336 at 14). However, the Lanham Act reserves attorney fees for exceptional cases, and a party succeeding on its claims is not, on its own, exceptional. WNI must show that something else—e.g. unreasonableness, bad faith—makes the case exceptional.

AST had a right to raise a defense against WNI's claims using any non-frivolous, good-faith evidence. AST did exactly that, in part through an expert who testified that, in his opinion, the AST products were enterically coated—at least in part. While the testimony of AST's expert was rejected in favor of the testimony of WNI's, that is not enough to merit an attorneys' fees award. While AST was ultimately wrong in claiming its products were enterically coated, the Court did not then, and does not now, find that it maintained a defense against WNI's claims in an objectively unreasonable fashion. Accordingly, this case is not exceptional.

Because this case is not exceptional, WNI is not entitled to attorney fees.

## II. Bill of Costs

### A. Legal Standard

Federal Rule of Civil Procedure 54(d)(1) states "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Prevailing parties

seeking costs must also adhere to our local rules, which require parties to submit the bill of costs, accompanied by support in the form of "affidavits or other evidence," within fourteen days of final judgment. LRCiv. 54.1(a), (b) ("This bill of costs shall include a memorandum of the costs and necessary disbursements, so itemized that the nature of each can be readily understood, and, where available, documentation of requested costs in all categories must be attached."). After notice of the Clerk's taxation is provided, it is final "unless modified on review by the Court on motion served within seven (7) days . . . ." *Id.* Parties seeking costs must strictly comply with these rules. *Gary v. Carbon Cycle Ariz. LLC.*, 398 F. Supp. 3d 468, 480–81 (D. Ariz. 2019).

### B. Analysis

Even assuming WNI qualifies as a prevailing party, WNI failed to provide sufficient documentation supporting its bill of costs as required by Local Rule 54.1. The Clerk properly denied WNI's bill of costs as being "inadequately documented." (Doc. 351). On April 19, 2024, WNI filed a Motion requesting the Court review the Clerk's decision. (Doc. 355). WNI disputes the Clerk's denial on the grounds that the costs were adequately documented. (*Id.* at 1–2). This is not the case. WNI did not include any documentary evidence as required under Local Rule 54.1. While WNI could have included invoices, cancelled checks, or receipts in its request for costs—as is expressly required by the local rules—it instead relied only on a summary of costs supported by a short affidavit of its counsel. (Doc. 339). Accordingly, the Clerk properly denied WNI's bill of costs.

WNI's Motion seeks to circumvent this conclusion by providing a substantial number of invoices that document its bill of costs. (Docs. 355-2 through 355-20). However, WNI's late evidentiary submission cannot be considered. This Court's role in reviewing the Clerk's action on WNI's bill of costs is exactly that, a review. In other words, the Court cannot now consider this evidence in a review of the Clerk's action because it was not provided to the Clerk when she made her initial decision. This outcome is highlighted by the fact that WNI itself seemed to be uncertain as to the total costs it was requesting. Three days after its request for review, WNI submitted a notice of errata

adjusting down the total costs by a total of $3,434.55. (Doc. 356).

In sum, WNI had a responsibility to submit its bill of costs alongside all supporting documentation. LRCiv. 54.1(a). WNI failed to do so, leaving the Clerk to properly deny WNI's bill of costs. As this Court's role is to review that decision, newly submitted substantiating evidence by WNI cannot be considered.

Accordingly, the Clerk properly denied WNI's bill of costs.

### III. Amended Judgment/New Trial

#### A. Legal Standard

A district court may grant a new trial "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). The Ninth Circuit has stated that district courts "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000) (citing *Ace v. Aetna Life Ins. Co.*, 139 F. 3d 1241, 1248 (9th Cir. 1998)). "The Ninth Circuit recognizes three grounds for granting a new trial after a bench trial: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." *Brooks v. Centurion of Ariz. LLC*, 2023 WL 3585250, at *2 (D. Ariz. May 22, 2023) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 n.4 (9th Cir. 2007)). It is the burden of the party seeking a new trial to prove one is warranted. *Id.*

Additionally, district courts may "open the judgment . . . take additional testimony, amend findings of fact and conclusions of law . . . and direct entry of a new judgment" after a nonjury trial. Fed. R. Civ. P. 59(a)(2). Such a motion must be filed within 28 days of the judgment. Fed. R. Civ. P. 59(e).

> In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the

- 5 -

>amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

## B. Analysis

AST's Motion seeks relief under Rule 59 based on two defenses that were fully raised and considered at trial: unclean hands and laches. These arguments were considered at trial, and were ultimately not convincing.

### 1. Laches

A claim is barred by laches if the defendant shows (1) the plaintiff unreasonably delayed in bringing suit and (2) the defendant is prejudiced by the delay. *Equal Emp. Opportunity Comm'n v. LogistiCare Sols. LLC*, No. CV-20-00852-PHX-GMS, 2020 WL 6781270, at *1 (D. Ariz. Nov. 18, 2020) (citing *Jarrow Formulas Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)). "Determining whether delay was unreasonable and whether prejudice ensued necessarily demands 'a close evaluation of all the particular facts in a case.'" *Id.* (quoting *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041(9th Cir. 2000)).

AST failed to carry its burden to show prejudice. AST offers two arguments in support of prejudice: (1) disgorgement of eight years of profits and (2) the costs of rebranding. These arguments, individually or together, do not show sufficient prejudice to justify laches.

AST argues prejudice based on the Court disgorging eight years of its profits, claiming it would have owed less in damages had WNI brought its suit earlier. AST's argument ignores that damages were already limited based on the three year statute of limitations. Because the suit was filed in 2019, no profits were disgorged beyond the three year statute of limitations, as required by law. Indeed, the majority of profits came from years during the pendency of this action. At base, AST was appropriately protected from undue prejudice through Arizona's statute of limitations. Accordingly, the years of disgorged profits does not show prejudice for the sake of laches.

AST also argues it is suffering substantial prejudice due to branding and advertising. To support this assertion, AST cites to the testimony of Luis Giraldy, who stated that the enteric coating was an "important advertising point." (Doc. 341-2 at 20). Mr. Giraldy later testified that over the last fourteen years, AST had spent $1 to $1.5 million in advertising. (*Id.* at 35–36). Advertising costs on their own is often not sufficient to show prejudice for laches. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 991–92 (9th Cir. 2009) ("'If [] prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay.'") (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965)). AST cannot rely solely on advertising costs to show prejudice, especially when its advertising costs are proven with such little evidence. AST points only to Mr. Giraldy's testimony, which includes a large range of estimated advertising costs incurred over a decade. Additionally, AST ultimately suffers from the same deficiency regarding advertising: "the advertising costs . . . presumably include costs for products not at issue in the case." (Doc. 336 at 15). While Mr. Giraldy testified that the largest focus of the advertising was on enteric coating, AST chose not to introduce detailed evidence that would allow the Court to discern the actual amount spent on marketing the enteric coating of the at issue products. As such, AST's reliance on advertising costs to prove prejudice is misplaced.

In sum, AST has not carried its burden for laches because it has not shown that it suffered sufficient prejudice from any delay by WNI.

### 2. Unclean Hands

"The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) (citations omitted). To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) "that the plaintiff's conduct is inequitable," and (2) "that the

conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987). "Factual similarity between the misconduct that forms the basis for an unclean hands defense and the plaintiff's allegations in the lawsuit is not sufficient." *POM Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010). Instead, the defense only protects those who "have acted fairly and without fraud or deceit *as to the controversy in issue*." *Fuddruckers, Inc.*, 826 F.2d at 847 (emphasis added).

Additionally, for Lanham Act false advertising claims, a plaintiff prevails on the unclean hands doctrine "only if the court is left with a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims." *Jarrow Formulas, Inc.*, 304 F.3d at 842. As an equitable defense, merely satisfying these requirements does not entitle a party to prevail on unclean hands: "courts must not automatically apply the doctrine of unclean hands and 'permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law.'" *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (citing *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383 (1944)). ("The maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but 'upon considerations that make for the advancement of right and justice.'") (citations omitted)).

AST has not shown that it is entitled to the protection of unclean hands. Regarding the first prong, it is undisputed that WNI also engaged in inequitable conduct by marketing its products as *buffer* enteric coated and labeling its products as compliant with various manufacturing standards. It is in prong two, however, that AST's unclean hands defense falters. While both parties ultimately violated the Lanham act through their advertising, such a violation is merely a factual similarity. AST engaged in false advertising because of its literally false claims that its products were enterically coated. As mentioned above, WNI's claim of a buffer-enteric coating and manufacturing compliance were also literally false. Importantly, though, AST failed to show that WNI's claim its products were not

enterically coated. Indeed, AST ultimately failed in showing falsity in WNI's claim its products had an enteric coating that was 100% effective. Even though both parties engaged in marketing violating the Lanham Act, the false claims made by each party were distinct. Had AST proven that WNI's claim regarding the 100% efficacy of its enteric coating was literally false, AST would have satisfied the second prong for unclean hands. Because AST failed to do so, the requirement for unclean hands was not met.

Even if AST had been successful on both prongs, the Court had no obligation to "automatically apply" unclean hands in a case such as this. As explained above, applying unclean hands requires a Court to consider whether the defense would advance justice. Here, justice is best dispensed through counter-weighing damages, not through a blanket defense of unclean hands. While each party made false claims, the effect of those claims in the marketplace is best reflected by disgorgement of profits, the remedy granted to *both parties* in this matter. The fact that AST ultimately owes WNI damages is a reflection of two things: (1) each party's ability to prove damages and (2) the fact that AST earned more profits while misleading consumers.

For these reasons, unclean hands was not an appropriate defense in this matter.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** WNI's Amended Motion for Award of Attorney's Fees and Non-Taxable Expenses (Doc. 340) is **DENIED**.

**IT IS FURTHER ORDERED** WNI's Motion to Review Bill of Cost Pursuant to Federal Rules of Civil Procedure 54(d) (Doc. 355) is **DENIED**.

**IT IS FINALLY ORDERED** Motion to Amend Findings and for New Trial, or in the Alternative to Alter or Amend Judgment or for Relief from Judgment (Doc. 341) is **DENIED**.

Dated this 5th day of August, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge